## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OPEN SOCIETY JUSTICE INITIATIVE<br>224 West 57th Street<br>New York, New York 10019<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, CRIMINAL DIVISION<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001;<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE, CIVIL DIVISION<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001;<br><br>EXECUTIVE OFFICE FOR UNITED STATES<br>ATTORNEYS, DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW, Room 2242<br>Washington, DC 20530-0001;<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY<br>245 Murray Lane, S.W.<br>Washington, D.C. 20528-0075;<br><br>and<br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES<br>111 Massachusetts Avenue, NW<br>MS 2260<br>Washington, DC 20529-2260;<br><br>*Defendants*. | Civil Action No. _____<br><br>**COMPLAINT**<br>(Freedom of Information Act) |

## PRELIMINARY STATEMENT

1.      Plaintiff Open Society Justice Initiative ("Plaintiff" or "OSJI") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the disclosure of records held by United States government agencies concerning the denaturalization and deportation of American citizens from 1948 through 2018. OSJI requests declaratory and other appropriate relief with respect to the government's unlawful withholding of these records.

2.      The public interests at stake in government transparency on the issue of denaturalization could not be more important. Denaturalization is the revocation of United States citizenship acquired by foreign nationals or formerly stateless persons through naturalization. For many Americans, losing their United States citizenship means losing their only nationality. For instance, this may happen if at the time of naturalization the citizen was stateless (*i.e.*, not considered a citizen by any country under the operation of its law) or if the citizen forfeited a former citizenship due to a country's laws prohibiting dual nationality or disallowing absence from the country for a defined period of time.

3.      Citizenship is essential to the realization of basic human rights. The enjoyment of these rights often depends on the full measure of state protection that only citizenship confers. Although international law and the United States Constitution grant non-citizens substantial legal protections, without citizenship it can be very difficult for people to exercise their rights, such as freedom of movement and access to basic healthcare, education, and housing. By revoking United States citizenship through denaturalization, the United States government knowingly exposes affected individuals to the consequent deprivation of human rights, including the deprivation of nationality, resulting in statelessness, as well as potential permanent separation from family members. Many denaturalization cases are brought under a civil statute and, as a result, individuals do not have a guaranteed right to counsel in complex legal proceedings.

Without access to the information pertaining to civil proceedings sought through the FOIA Request (defined below), it is also extremely difficult for willing legal organizations to provide legal representation and for naturalized citizens to obtain quality representation.

4.      For these reasons, during the past 110 years, the United States government rarely invoked its denaturalization powers, reserving them for rare and exceptional cases, such as former Nazis and other war criminals attempting to evade prosecution by hiding out in the United States under false pretenses.

5.      However, based upon recent reports and public statements by the current administration, the use of denaturalization appears to be expanding significantly. For example, the current administration is conducting a systematic investigation of thousands of historical fingerprint records and associated immigration files ("A files") to identify potential cases for denaturalization, including instances in which naturalized Americans had allegedly failed to disclose a previous removal order. In such cases, the Department of Homeland Security may refer potential cases to the Department of Justice for consideration and prosecution under two denaturalization statutes, 8 U.S.C. § 1451 and 18 U.S.C. § 1425. Naturalized citizens identified through this investigation will be alleged to have fraudulently obtained legal residency and, if the government succeeds, they could be stripped of citizenship and potentially deported.[1] More recently, in February 2020, the Civil Division of the Department of Justice created a Section

---

[1]      Nick Miroff, *Scanning Immigrants' Old Fingerprints, U.S. Threatens To Strip Thousands of Citizenship*, WASH. POST (June 13, 2018), https://www.washingtonpost.com/world/national-security/scanning-immigrants-old-fingerprints-us-threatens-to-strip-thousands-of-citizenship/2018/06/13/2230d8a2-6f2e-11e8-afd5-778aca903bbe_story.html.

dedicated to investigating and litigating the denaturalization "of individuals who have illegally obtained citizenship."[2]

6.      While there is ongoing media attention concerning the government's increasing denaturalization efforts, there is a lack of objective, official information from the United States government regarding the nature and scope of these efforts and the reasons for and policies underlying this expanded activity.

7.      To better understand and clarify to the public the United States government's activities and policies on the revocation of citizenship and its potential consequences—both for the former naturalized citizen and for those, including children, who hold derived citizenship through the naturalized citizen—OSJI has sought comprehensive records relating to both criminal and civil denaturalization proceedings.

8.      On December 21, 2018, Plaintiff filed a FOIA request (the "Request") with the Civil and Criminal Divisions of the United States Department of Justice ("DOJ"), the Executive Office for United States Attorneys ("EOUSA"), and United States Citizenship and Immigration Services ("USCIS"). (*See* Exhibit A.) On May 7, 2019, USCIS forwarded the Request to the United States Department of Homeland Security ("DHS") for consideration and direct reply. (*See* Exhibit E.)

9.      As of this filing, Defendants (defined below) have failed to comply with their obligations under the FOIA and produce the documents sought in the Request. Plaintiff is legally entitled to receive the documents and the public is entitled to the information contained therein regarding the United States government's denaturalization policies.

---

[2]      The Department of Justice Creates Section Dedicated to Denaturalization Cases (Feb. 26, 2020) [hereinafter DOJ Press Release], Press Releases U.S. Dep't of Justice, https://www.justice.gov/opa/pr/department-justice-creates-section-dedicated-denaturalization-cases.

10.     As a result, Plaintiff seeks a declaration that it is entitled to receive the documents sought in the Request and an injunction ordering Defendants to respond to Plaintiff's Request, conduct a thorough search for all responsive records, and provide the requested documents.

## JURISDICTION AND VENUE

11.     This Court has federal subject matter jurisdiction over this action and personal jurisdiction over all parties pursuant to 5 U.S.C. § 552(a)(4)(B). Because this action arises under the FOIA against agencies of the United States, this Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.

12.     Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), because the FOIA request was made to Defendants headquartered in this District and, upon information and belief, Defendants maintain records and information subject to the Request in this District.

## STATUTORY BACKGROUND

13.     Enacted in 1966, the Freedom of Information Act "provides that any person has a right, enforceable in court, to obtain access to federal agency records." *About FOIA* (Oct. 30, 2018), U.S. Dep't of Justice, https://www.justice.gov/archives/open/foia. The "basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Id.* (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). The "FOIA is often explained as a means for citizens to know 'what their Government is up to.'" *Id.* (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (citation omitted)). "The Supreme Court stressed that '[t]his phrase should not be dismissed as a convenient formalism.' Rather, it 'defines a structural necessity in a real democracy.'" *Id.* (citations omitted)).

4

14.     Under the FOIA, upon receipt of a FOIA request, an agency must determine within 20 business days—or, in "unusual circumstances," within 30 business days—whether it will comply with a request and notify the requestor of its determination and reasoning in writing. 5 U.S.C. § 552(a)(6)(A)(i)-(B)(i). This determination must also timely indicate the scope of the documents the agency intends to produce and the exemptions, if any, that it asserts will entitle it to withhold documents.

15.     In response to a FOIA request, an agency, after engaging in a reasonable search for responsive records, including any field offices that may possess relevant materials, must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions. 5 U.S.C. § 552(a)(3)(A), (C), (b)(1)-(9).

16.     Typically, a requester under the FOIA must appeal agency action administratively before commencing litigation. However, if the agency has failed to abide by its obligations and issue a determination on the request or a determination on an administrative appeal within the statutory timeframe, the administrative appeal process is considered exhausted. 5 U.S.C. § 552(a)(6)(C)(i).

17.     Upon complaint, a district court can enjoin an agency from withholding records and order production of records improperly withheld. 5 U.S.C. § 552(a)(4)(B).

## **PARTIES**

18.     Plaintiff OSJI is an operating public interest law center dedicated to upholding human rights and the rule of law through litigation, advocacy, research, and technical assistance, with offices in New York, London, and Berlin. It is part of the Open Society Institute ("OSI"), a tax-exempt, non-partisan, not-for-profit organization, headquartered in New York City. OSJI is a "person" within the meaning of 5 U.S.C. § 551(2). OSI believes that solutions to national,

regional, and global challenges require the free exchange of ideas and thought. In support of their shared mission, OSJI and OSI share information with the public free of charge, through its website, newsletters, and other publications to promote public understanding and robust debate. Disseminating information is among OSJI's core activities. To accomplish its goals, OSJI maintains a website, http://www.justiceinitiative.org, through which it disseminates publications, articles, and multimedia files relating to its mission. It also directly distributes hard copies of publications and disseminates information through quarterly email newsletters, blogs, Twitter, and Facebook.

19.     Defendant Criminal Division of the DOJ ("DOJ Criminal Division") is the United States agency responsible for the enforcement of law and, in particular, the criminal prosecution of denaturalization suits. It is a component of the DOJ and a direct recipient of the Request. The Criminal Division develops, enforces, and supervises the application of federal criminal laws, including prosecuting denaturalization lawsuits under 18 U.S.C. § 1425. Upon information and belief, the DOJ Criminal Division has possession of and control over documents and information requested by Plaintiff and is an agency within the meaning of 5 U.S.C. § 552(f).

20.     Defendant Civil Division of the DOJ ("DOJ Civil Division") is the United States agency responsible for the enforcement of law and, in particular, the civil prosecution of denaturalization suits. It is a component of DOJ and a direct recipient of the Request. The Civil Division litigates cases related to immigration enforcement on behalf of the United States, including prosecuting denaturalization cases under 8 U.S.C. § 1451. Upon information and belief, the DOJ Civil Division has possession of and control over documents and information requested by Plaintiff and is an agency within the meaning of 5 U.S.C. § 552(f).

21.     Defendant EOUSA serves as the nation's principal litigators under the direction of the Attorney General, and is a direct recipient of the Request. Under 28 U.S.C. § 547, the EOUSA prosecutes criminal cases brought by the Federal Government and prosecutes and defends civil cases in which the United States is a party, including the prosecution of denaturalization suits. Upon information and belief, the EOUSA has possession of and control over documents and information requested by Plaintiff and is an agency within the meaning of 5 U.S.C. § 552(f).

22.     Defendant DHS is responsible for enforcing federal immigration laws. Defendant USCIS is a component of DHS that oversees lawful immigration to the United States and the deportation and removal of denaturalized individuals. USCIS is a direct recipient of the Request. USCIS forwarded the Request to DHS after it determined that the requested records may be under the purview of DHS. (*See* Exhibit E.) Upon information and belief, DHS and USCIS have possession and control over documents and information requested by Plaintiff, and are agencies within the meaning of 5 U.S.C. § 552(f).

23.     "Defendants," as used herein, collectively refers to Defendant DOJ Criminal Division, Defendant DOJ Civil Division, Defendant EOUSA, Defendant USCIS, and Defendant DHS.

## FACTUAL BACKGROUND

**A.      The Federal Government's Practice of Denaturalization Is a Matter of Significant Public Interest.**

24.     Citizenship is essential to the realization of human rights. Since the beginning of 2017, the government has increased efforts to revoke citizenship through the denaturalization process. (*See* Exhibit B at 10.) Based upon OSJI's research, civil denaturalization proceedings filed have nearly tripled in 2017 and 2018 as compared to previous years. (*See id.*)

25.    Upon information and belief, the projected and actual increase in denaturalization cases is due in large part to an effort by the Federal Government to scrutinize previously collected immigration data in search of potential inconsistencies. Since January 2018, USCIS has dedicated a team to digitizing historical immigration-related fingerprint data with the intention of referring approximately 1,600 people to the Department of Justice for prosecution based on a review of an estimated 700,000 immigration files.[3]

26.    These deliberate efforts to expand the use of denaturalization proceedings appear to be continuing. "Justice Department lawyers have filed 94 denaturalization cases since 2017 and the agency's annual filing rate has shot up by 200% over the past three years . . . . During that same period, there has been a 600% increase in case referrals from DHS."[4] In March 2019, the DOJ Civil Division cited 54 additional referrals made in the first two months of 2019 alone.[5] Most recently, on February 26, 2020, DOJ Civil Division announced its creation of a Section exclusively dedicated to investigating and litigating denaturalization cases, a move motivated by "the growing number of referrals anticipated from law enforcement agencies."[6]

27.    Although the Denaturalization Section is meant to "underscore[] the department's commitment to bringing justice to terrorists, war criminals, sex offenders, and other fraudsters who illegally obtained naturalization," some Justice Department immigration lawyers have

---

[3]    (*See* Exhibit B at 69 (citing USCIS, *USCIS Partners with Justice Department and Secures First Denaturalization As a Result of Operation Janus* (Jan. 10, 2018), https://www.uscis.gov/news/news-releases/uscis-partners-justice-department-and-secures-first-denaturalization-result-operation-janus).)

[4]    Hamed Aleaziz, *A New Section of US Attorneys Is Being Created To Strip Naturalized Citizenship From Suspected Fraudsters*, BUZZFEED.NEWS (Feb. 26, 2020), https://www.buzzfeednews.com/article/hamedaleaziz/us-attorneys-strip-naturalization-fraud.

[5]    (*See* Exhibit B at 69. (citing DOJ Civil Division, *FY2020 Budget & Performance Plans*, at 26 (Mar. 2019), https://www.justice.gov/jmd/page/file/1143936/download).)

[6]    DOJ Press Release, *supra*.

expressed worries that denaturalizations could be broadly used to strip citizenship, citing the fact that the department can pursue denaturalization lawsuits against people who commit "fraud," a broadly-defined term that can include small infractions like misstatements on the citizenship application.[7]

28.     Upon information and belief, there is likely to be unlawful targeting of immigrants based upon their country of origin, such as Mexico, Haiti and Nigeria, which have among the highest representation in recent denaturalization cases.[8] It thus appears that the accelerated enforcement of denaturalization statutes provides a potential avenue to undermine naturalized citizenship, rendering it contingent and insecure.[9]

29.     This increased use of the previously rare denaturalization process leaves thousands of United States citizens vulnerable to the possibility that they or a family member will be stripped of their citizenship.

30.     The prospect of denaturalization also has the broader chilling effect of causing immigrant communities to reduce the free exercise of their rights and to feel "a sense of subordination, social paralysis, and surveillance." (Exhibit B at 74.)

---

[7]     Katie Benner, *Justice Dept. Establishes Office to Denaturalize Immigrants,* N.Y. TIMES (Feb. 27, 2020), https://www.nytimes.com/2020/02/26/us/politics/denaturalization-immigrants-justice-department.html (citation omitted).

[8]     (*See* Exhibit B at 11, 46, 47 (citing *Drug Dealers, criminals, rapists: What Trump thinks of Mexicans*, BBC NEWS (Aug. 31, 2016), https://www.bbc.com/news/av/world-us-canada-37230916/drug-dealers-criminals-rapists-what-trump-thinks-of-mexicans; Stef W. Kight, *Report: Trump said Haitian Immigrants "All Have AIDS,"* AXIOS (Dec. 23, 2017), https://www.axios.com/report-trump-said-haitian-immigrants-all-have-aids-1515110820-4d6f7da4-ca7a-4e01-9329-7f25b49e709c.html; Alex Daugherty, *Trump called Haiti a 'sh--hole' campaigning in Miami in 2016, Woodward's book says*, MIAMI HERALD (Sept. 11, 2018), https://www.miamiherald.com/news/politics-government/article218202540.html; Michael D. Shear & Julie Hirschfeld Davis, *Stoking Fears, Trump Defied Bureaucracy to Advance Immigration Agenda*, N.Y. TIMES (Dec. 23 2017), https://www.nytimes.com/2017/12/23/us/politics/trump-immigration.html).)

[9]     *See* Karen J. Greenberg, *Citizenship in America: A Country's "Priceless Treasure" Under Siege*, THE CENTURY FOUNDATION (Oct. 24, 2019), https://tcf.org/content/report/citizenship-america-countrys-priceless-treasure-siege/?session=1.

31.     The public has a significant interest in the increased efforts to denaturalize this country's citizens and the potential use of the denaturalization process to target and discriminate against immigrants from certain countries, religious backgrounds or ethnic groups—a tactic that is hostile to our Constitution and founding principles.

32.     Due to the urgency of the issues described herein, OSJI has already drafted and disseminated a report on the increased use of denaturalization over the past several years. (*See* Exhibit B at 8.) However, due to Defendants' recalcitrance, it was forced to do so without the benefit of records to which the public is entitled. If provided the records it has requested, OSJI will continue to use the information to better educate the public about the importance of protecting citizenship in all of its forms.

**B.      OSJI's FOIA Request**

33.     OSJI submitted the Request to the DOJ Civil Division, DOJ Criminal Division, EOUSA and USCIS on December 21, 2018. (*See* Exhibit A.)

34.     The Request seeks records from 1948 to 2018, disaggregated by year, regarding denaturalization under the relevant civil and criminal statutes, as well as records regarding deportation or removal of individuals denaturalized under both statutes. It also seeks information regarding the revocation of derivative citizenship following a parent or spouse's denaturalization pursuant to 8 U.S.C. § 1451(d). Finally, the Request seeks information relating to stateless persons, *i.e.*, individuals who are not considered citizens by any country under the operation of law, and policies and practices concerning statelessness in relation to denaturalization.

**1.      Data Requested**

35.     Regarding criminal denaturalization, the Request seeks:

(a)     The number of criminal denaturalization cases filed from 1948-2018, disaggregated by year, for individuals who had successfully procured citizenship for oneself, including:

    (i)      The corresponding number that resulted in conviction;

    (ii)     The corresponding number that resulted in acquittal;

    (iii)    The corresponding number that were dismissed;

    (iv)    The corresponding number that resulted in denaturalization;

    (v)     The corresponding number of convictions concluded by plea agreement or plea bargain;

    (vi)    The corresponding number of prosecutions in which a Judicial Order of Removal was granted; and

    (vii)   The corresponding number of individuals deported/removed following conviction, including voluntary removal.

(b)     The nationalities of origin for criminal denaturalization cases filed from 1948-2018, disaggregated by year, for individuals who had successfully procured citizenship for oneself (excluding attempt or procuring naturalization for another person), indicating by number where more than one person of the same nationality of origin was charged, including:

    (i)      The corresponding information for cases that resulted in convictions;

    (ii)     The corresponding information for cases that resulted in denaturalization; and

        (iii)    The corresponding information regarding individuals who were subsequently deported/removed, including voluntary removal and destination of deportation. (*See* Exhibit A at II.A.1-2.)

36.    Regarding civil denaturalization, the Request seeks:

    (a)    The number of civil denaturalization cases filed from 1948-2018, disaggregated by year, including:

        (i)    The corresponding number found against the defendant;

        (ii)    The corresponding number found for the defendant;

        (iii)    The corresponding number that were dismissed;

        (iv)    The corresponding number that resulted in denaturalization;

        (v)    The corresponding number decided in absentia;

        (vi)    The corresponding number decided on summary judgment;

        (vii)    The corresponding number concluded by consent judgment against the defendant/revoking naturalization or similar civil agreement; and

        (viii)    The corresponding number of individuals deported/removed following judgment against the individual, including voluntary removal.

    (b)    The nationalities of origin for civil denaturalization cases from 1948-2018, disaggregated by year, indicating by number where more than one person of the same nationality of origin was charged, including:

        (i)    The corresponding information for cases found against the defendant;

(ii)     The corresponding information for cases that resulted in denaturalization;

(iii)    The corresponding information regarding individuals who were subsequently deported/removed, including voluntary removal, and destination of deportation. (*See* Exhibit A at II.A.3-4.)

37.      Regarding derivative citizenship, the Request seeks:

(a)      The number of individuals whose citizenship has been revoked due to a spouse or parent's denaturalization from 1948-2018, disaggregated by year, including:

(i)      The corresponding information on the nationalities of origin of these individuals;

(ii)     The corresponding information regarding the age of these individuals when citizenship was procured and the age when citizenship was revoked; and

(iii)    The corresponding number of individuals removed as a result of citizenship revocation and the destination of removal. (*See* Exhibit A at II.A.5.)

**2.     <u>Full Records Requested</u>**

38.      Regarding civil and criminal denaturalization, the Request seeks all records:

(a)      Prepared, received, transmitted, collected and/or maintained on or after January 20, 2017 related to denaturalization proceedings under 8 U.S.C. § 1451 and 18 U.S.C. § 1425; and

(b)    Prepared received, transmitted, collected and/or maintained on or after January 20, 2017 related to Judicial Orders of removal. (*See* Exhibit A at II.B.6-7.)

39.    Regarding derivative citizenship, the Request seeks all records pertaining to the practice of revoking citizenship of individuals whose spouse or parent was denaturalized. (*See* Exhibit A at II.B.8.)

40.    Regarding statelessness, the Request seeks all records:

(a)    Prepared, received, transmitted, collected and/or maintained related to denaturalization that include the following terms:

(i)    "stateless"
(ii)    "statelessness"
(iii)    "unknown nationality;"

(b)    Prepared, received, transmitted, collected and/or maintained related to the denaturalization of U.S. citizens where such person, if denaturalized, would become stateless; and

(c)    Prepared, received transmitted, collected and/or maintained related to the removal/deportation of stateless persons. (*See* Exhibit A at II.B.9-11.)

41.    OSJI requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

## C.    Agency Responses and Exhaustion of Administrative Remedies

42.    On December 21, 2018, OSJI submitted its Request to EOUSA, DOJ Criminal Division, DOJ Civil Division and USCIS. (*See* Exhibit A.)[10]

---

[10]    Plaintiff submitted a revised Request on December 26, 2018, correcting the civil statutory section referenced in the Request. (*See* Exhibit L.)

43.     ***Defendant USCIS has never substantively responded to the Request.*** In a letter, dated December 31, 2018, USCIS denied OSJI's request for expedited processing. (*See* Exhibit C.) In a separate letter, dated December 31, 2018, USCIS acknowledged receipt of OSJI's request for a fee waiver and granted it. (*See* Exhibit D at 3.) In that same letter, USCIS invoked 5 U.S.C. § 552(a)(6)(B) and extended the time limit to respond to the Request by ten days. (*See id.*) USCIS claimed that additional time was needed as a result of "unusual circumstances" surrounding the Request, without explaining why the circumstances were unusual. (*Id.*) USCIS indicated it had been receiving an "increasing number of FOIA requests," needed to "locate, compile, and review responsive records from multiple offices, both at headquarters and in the field" and potentially consult with other agencies or components of the DHS. (*Id.*) Nearly five months later on May 7, 2019, USCIS forwarded the Request to Defendant DHS. (*See* Exhibit E.) As of the date of this Complaint, more than a year after OSJI submitted the Request, USCIS has neither responded nor produced documents in response to the Request. A complete copy of OSJI's correspondence with USCIS is attached hereto as Exhibits C to E.

44.     ***Defendant EOUSA has never substantively responded to the Request.*** On January 28, 2019, EOUSA informed OSJI via email that OSJI's request for Expedited Processing was denied. (*See* Exhibit F.) On February 21, 2019, OSJI emailed EOUSA after attempting to reach the agency on the phone to discuss potentially modifying the Request in an attempt to obtain a faster response. (*See* Exhibit G at 5.) On March 8, 2019, OSJI again emailed EOUSA indicating its willingness to modify the Request in hopes of receiving a quicker response. (*See id.*) On March 11, 2019, after a call with EOUSA, OSJI formally submitted via email a modified version of the Request, omitting several categories of information sought in the initial Request in an attempt to compromise with the agency. (*See id.* at 4-5.) On March 19, 2019, OSJI followed

up with EOUSA via email to ensure the agency received OSJI's modified Request. (*See id.* at 3-4.) Nearly two months later, on May 15, 2019, EOUSA indicated that it will "contact [its] Data Analysis Staff to see if we can move this request through completion." (*Id.* at 1.) Despite OSJI's repeated email and phone inquiries to EOUSA regarding the modified Request, as of the date of this Complaint and more than a year after Plaintiff submitted the initial Request, EOUSA has neither responded nor produced documents in response to the Request. A complete copy of Plaintiff's correspondence with EOUSA is attached hereto as Exhibits F to G.

45.     ***Defendant DOJ Criminal Division has never substantively responded to the Request.*** On February 1, 2019, Defendant DOJ Criminal Division sent a letter acknowledging receipt of OSJI's Request.[11] (*See* Exhibit H at 1.) In the same letter, DOJ Criminal Division invoked 5 U.S.C. § 552(a)(6)(B)(i)-(iii), extending the time limit to respond to the Request by ten days, and indicated that it had not yet made a decision on OSJI's request for a fee waiver. (*See id.*) DOJ Criminal Division also denied OSJI's request for expedited treatment in that letter. (*See id.* at 2.) As of the date of this Complaint, there have been no further communications from DOJ Criminal Division.

46.     ***Defendant DOJ Civil Division has failed to produce the vast majority of documents responsive to the Request.*** Months after OSJI submitted its Request, on March 1, 2019, DOJ Civil Division released a mere ***four documents*** as an interim response. (*See* Exhibit I at 1.) On March 8, 2019, OSJI emailed DOJ Civil Division with two follow up questions regarding their interim production, and DOJ Civil Division addressed those question on the same

---

[11]   The DOJ Criminal Division noted that "[d]ue to the lapse of appropriations from December 22, 2018, through January 25, 2019, your correspondence was not received by an official in this Office until January 28, 2019." (Exhibit H at 1.) Even taking into account the alleged delay due to a lapse of appropriations, the DOJ Criminal Division has yet to provide a response of any kind to the Request.

day. (*See* Exhibit J at 1-2.) After waiting to hear from DOJ Civil Division for more than a month,

on April 9, 2019, OSJI followed up with DOJ Civil Division via email regarding the status of

additional documents accumulated by the agency. (*See id.* at 1.) On the same day, DOJ Civil

Division responded via email that the remaining records are protected by attorney-client and

work-product privileges. (*See id.*) Further, DOJ Civil Division indicated that most of the records

would not be in the possession of DOJ Civil Division but would instead be in possession of the

DHS. (*See id.*) DOJ Civil Division indicated it would send a final response letter later in the

week. (*See id.*) More than a month later, on April 11, 2019, DOJ Civil Division sent a letter

indicating that it was withholding in full "an additional 328 records responsive to [Plaintiff's]

request." (Exhibit K at 1.) DOJ Civil Division claimed that the records were "certain inter- and

intra-agency communications protected by the deliberative process privilege, the attorney work-

product privilege and the attorney-client privilege" under 5 U.S.C. § 552(b)(5). (*Id.*) Further,

DOJ Civil Division claimed that it was withholding "material the release of which would

constitute a clearly unwarranted invasion of the personal privacy of third parties" under 5 U.S.C.

§ 552(b)(6). (*Id.*) DOJ Civil Division's letter provided no explanation of why all the documents

were covered by the claimed exemptions or how their disclosure would present a risk of invasion

of deliberative process privilege, attorney work-product privilege, or the attorney-client

privilege.[12] Nor does it explain why documents with private information could not be produced

with redactions.

---

[12]   *See Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (Ginsburg, J.) ("We have
repeatedly underscored . . . that the agency invoking a FOIA exemption bears the burden of 'establish[ing] [its]
right to withhold evidence from the public.' We have simultaneously cautioned that 'conclusory assertions of
privilege will not suffice to carry' the agency's burden.") (second and third alternations in original) (citations
omitted)); *see also Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010) ("FOIA
allows agencies to withhold only those documents that fall under one of nine specific exemptions which are
construed narrowly in keeping with FOIA's presumption in favor of disclosure. The agency bears the burden of
showing that a claimed exemption applies." (citations omitted)).

47.     Therefore, as of the date of this Complaint, more than one year after OSJI submitted the Request, the Defendants DOJ Criminal Division and DOJ Civil Division have failed to render an adequate and proper response to the Request and continue to improperly withhold documents responsive to the Request. Copies of all of OSJI's correspondence with both divisions of the DOJ are attached hereto collectively as Exhibits H to K.

48.     ***Defendant DHS has never substantively responded to the Request.*** On May 7, 2019, USCIS forwarded the Request to DHS. (*See* Exhibit E.) As of the date of this Complaint, DHS has neither responded nor produced any additional documents in response to the Request.

49.     Despite their obligations under the FOIA, Defendants have failed to provide adequate and proper responses and to release all records responsive to the Request within the statutory timeframe. Defendants EOUSA, DOJ Criminal Division, USCIS and DHS have improperly refused to process OSJI's Request at all. (*See* Exhibits C to K.) DOJ Civil Division, meanwhile, waited months after the statutory time limit elapsed and then produced a total of four documents (*see* Exhibit I), while acknowledging that it was withholding the vast majority of relevant materials. (*See* Exhibit K.)

50.     Because Defendants have failed to comply with the statutory time limits set forth in the FOIA statute, OSJI's administrative remedies are now considered exhausted under 5 U.S.C. § 552(a)(6)(c)(1).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Against All Defendants*

**Violation of the Freedom of Information Act, 5 U.S.C. § 552,
and 6 C.F.R. § 5.6(c) Promulgated Thereunder, for
Failure To Disclose Responsive Agency Records**

51.     Plaintiff repeats, alleges, and incorporates by reference the allegations in

paragraphs 1 through 49 above as though fully set forth therein.

52.     Defendants have violated 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(A), as

well as 6 C.F.R. § 5.6(c), promulgated thereunder by improperly withholding documents

responsive to the Request.

53.     Defendants are obligated under 5 U.S.C. § 552(a)(3) to produce records

responsive to Plaintiff's Request.

54.     Defendants were required to respond to Plaintiff's Request within 20 business

days under 5 U.S.C. § 552(a)(6)(A) and 6 C.F.R. § 5.6(c), promulgated thereunder.

55.     No basis exists for Defendants' failures to provide responses to Plaintiff's

Request. Plaintiff has constructively exhausted its administrative remedies under the FOIA by

virtue of each Defendant's failure to reach a determination on the Request and release responsive

documents to Plaintiff.

56.     5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiff

because Defendants continue to flout the FOIA and improperly withhold responsive records.

57.     28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable

controversy exists regarding Defendants' improper withholding of agency records in violation of

the FOIA.

## SECOND CAUSE OF ACTION
### *Against All Defendants*

### Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Conduct an Adequate Search of Agency Records

58.     Plaintiff repeats, alleges, and incorporates by reference the allegations in paragraphs 1 through 49 above as though fully set forth therein.

59.     Plaintiff's Request seeks records from January 1, 1948 through to December 31, 2018, disaggregated by year.

60.     Defendants DHS, DOJ Criminal Division, and EOUSA have failed to produce any responsive records.

61.     Defendant DOJ Civil Division has failed to produce the vast majority of responsive records.

62.     Each Defendant is obligated under 5 U.S.C. § 552(a)(3)(C) to conduct a reasonable search for and to produce records responsive to Plaintiff's Request. Plaintiff has a legal right to obtain such records, and no legal basis exists for Defendants' failure to conduct reasonable searches for records through the present date.

63.      Defendants' failure to conduct a reasonable search for records responsive to Plaintiff's Request violates 5 U.S.C. § 552(a)(3)(C) and (a)(6)(A), as well as 6 C.F.R. § 5.6(c) promulgated thereunder.

64.     5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiff because Defendants continue to flout the FOIA and improperly withhold responsive records.

65.     28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendants' improper withholding of agency records in violation of the FOIA.

## THIRD CAUSE OF ACTION
### *Against All Defendants*

### Violation of Administrative Procedure Act, 5 U.S.C. §§ 706(1) & (2), for Failure to Respond to the Request for Agency Records

66.     Plaintiff repeats, alleges, and incorporates by reference the allegations in paragraphs 1 through 49 above as though fully set forth therein.

67.     Each Defendant's failure to respond to Plaintiff's Request for agency records constitutes "agency action unlawfully withheld and unreasonably delayed" in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1).

68.     Additionally, each Defendant's failure to timely respond to the Request is "arbitrary, capricious, an abuse of discretion" and otherwise unlawful. 5 U.S.C. § 706(2).

69.     5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiff because Defendants continue to flout the FOIA and improperly withhold responsive records.

70.     28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendants' improper withholding of agency records in violation of the FOIA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in its favor and against each Defendant, and that the Court:

A.     Declare unlawful each Defendant's refusal to disclose the records requested;

B.     Declare that each Defendant's failure to make a determination with respect to Plaintiff's Request within the statutory time limit and each Defendant's failure to disclose responsive records violates the FOIA;

C.      Declare that each Defendant's failure to timely respond to Plaintiff's request for agency records violates the Administrative Procedure Act;

D.      Order and Direct each Defendant and any of Defendants' departments, components, other organizational structures, agents, or other persons acting by, through, for, or on behalf of any of Defendants to conduct a full, adequate, and expeditious search for records responsive to Plaintiff's Request and to produce any and all such records to Plaintiff;

E.      Enjoin each Defendant from charging Plaintiff to search, review, and duplication fees relating to the Request;

F.      Order and Direct Defendant DOJ Civil Division to produce the records it withheld based on statutory exemptions, or, in the alternative, to produce an itemized index with justifications for each responsive document that has been withheld on the basis of a statutory exemption and/or claimed privilege;

G.      Enjoin Defendants, and any of their departments, components, other organizational structures, agents, or other persons acting by, through, for or on behalf of Defendants from withholding non-exempt records responsive to the Request and order them to promptly produce the same without redaction;

H.      Award Plaintiff its reasonable attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E)(i); and

I.      Grant any such other or further relief as the Court deems just and equitable.

Dated: March 11, 2020

Respectfully submitted,

/s/ David E. Carney
David E. Carney (D.C. Bar No. 472219)
1440 New York Avenue, NW
Washington, D.C. 20005
Phone: (202) 371-7000
david.carney@probonolaw.com

Jeffrey A. Mishkin (*pro hac vice pending*)
Elizabeth A. Molino Sauvigne (*pro hac vice pending*)
Sophia M. Mancall-Bitel (*pro hac vice pending*)
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
Jeffrey.Mishkin@probonolaw.com

Anthony W. Clark (*pro hac vice pending*)
One Rodney Square, P.O. Box 636
Wilmington, Delaware 19899

James A. Goldston (*pro hac vice pending*)
Laura Bingham (*pro hac vice pending*)
Natasha Arnpriester (*pro hac vice pending*)
Open Society Foundations
224 West 57th St.
New York, NY 10019

*Attorneys for Plaintiff*